FILED

Jan 24 2024, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Jon R. Pactor<br>Indianapolis, Indiana | Steven F. Fillenwarth<br>Carmel Family Law<br>Carmel, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

Imogene Perry,

*Appellant-Interested Party,*

v.

Anne H. Poindexter, Personal Representative of the Supervised Estate of Richard Abbott,

*Appellee-Petitioner,*

Janice Mandla Mattingly,

*Appellee-Intervenor,*

Michael P. Brown and Phillip Brown,

*Appellees-Interested Parties*

January 24, 2024

Court of Appeals Case No.
22A-EU-2774

Appeal from the Hamilton
Superior Court

The Honorable Michael A. Casati,
Judge.

Trial Court Cause No.
29D01-2106-EU-000269

**Opinion by Judge May**
Chief Judge Altice and Judge Foley concur.

**May, Judge.**

[1] Imogene Perry appeals the trial court's denial of her motion for relief from default judgment. She presents multiple issues for our review, one of which we find dispositive: whether the trial court erred when it denied her motion for relief from judgment pursuant to Indiana Trial Rule 60(B)(6) based on the lack of notice she received after Jane Mandla Mattingly, as personal representative of the estate of Richard Abbott ("the Estate"), filed a motion for return of funds and the court scheduled a hearing thereon. We reverse and remand.

## Facts and Procedural History

[2] On September 4, 2015, Richard Abbott passed away in Muncie, Indiana. At some point thereafter, Lauth Investigations International, Inc. ("Lauth"), a company based in Indiana, discovered Abbott had unclaimed assets of approximately $52,150.00. On May 1, 2021, Perry, Abbott's heir and a resident of Georgia at the time, signed a Claimant Agreement with Lauth in which she agreed, among other things, to pay Lauth a "finder fee equal to ten percent (10%) of the actual recovered amount of Assets." (Appellee's App. Vol. II at 45.) As part of the Claimant Agreement, Perry also signed a "Contract for Genealogical Research Services[,]" wherein she agreed to allow Lauth to conduct genealogical research to determine all of Abbott's heirs. (*Id.* at 46.) The Genealogical Contract also provided Perry agreed to pay Lauth "at constancy fee basis at rate 20% of total recovered assets . . . [to be] paid within 10 days of when the assets are recovered by client[.]" (*Id.*) Finally, as part of the Claimant Agreement, Perry signed a Limited Power of Attorney allowing

Lauth to, among other things, "communicate and transact business with third parties on my behalf, including but not limited to, government agencies, courts, political subdivisions, vital records, holding companies, and agents of whatever kind, for the purpose of recovering lost or unclaimed assets, property, or funds to which I may be entitled." (*Id*. at 47.)

[3] On June 3, 2023, Lauth retained Mattingly, an attorney based in Carmel, Indiana, to administer the Estate. Mattingly filed a petition for administration of the Estate without court supervision in Hamilton County Superior Court. In that petition, she asked the trial court to name her as personal representative and requested that she not be required to post bond prior to the administration of the Estate because "she is otherwise insured." (Appellant's App. Vol. II at 16.) As part of the petition, Mattingly submitted a signed copy of the trial court's "Instructions to Personal Representative of Unsupervised Estate" ("Instructions"). (*Id*. at 20) (original formatting omitted). In those Instructions, Mattingly agreed to "[f]ile with this court, within sixty (60) days from the date this court issued [sic] your letters, a verified inventory of all property belonging to the decedent on the date of death along with values as of that date" and "[a]fter court authorization, make distributions to the proper heirs or beneficiaries[.]" (*Id*.)

[4] On June 7, 2021, the trial court granted Mattingly's petition and named Mattingly as the personal representative of the Estate. On June 17, 2021, the trial court issued Mattingly's Letter of Administration of the Estate. At some point between June 17, 2021, and September 21, 2021, Mattingly, as personal

representative of the Estate, filed a claim in Abbott's name and collected the $52,150.00 in unclaimed funds held by the Indiana Attorney General. After paying $15,645.00 in fees,[1] Mattingly disbursed $36,505.00 to Perry as Abbott's heir.

[5] On September 21, 2021, Michael P. Brown ("Michael") and Phillip Brown ("Phillip") (collectively, "Brown Heirs") filed a petition in the Estate proceedings to determine heirs of decedent, alleging Michael, Phillip, Vanessa O'Bryant, and Michelle DiPego were Abbott's maternal heirs and thus entitled to a portion of the Estate. Brown Heirs asked the trial court to set a hearing on the matter. Additionally, Brown Heirs argued the Estate "was improperly filed in Hamilton County, contrary to Ind. Code 29-1-7-1, in that decedent did not reside, die or own property in Hamilton County." (*Id.* at 22.) The trial court set a hearing on the matter for November 16, 2021. The Estate filed a motion to continue the hearing, which the trial court granted and then rescheduled the hearing for December 28, 2021.

[6] On December 2, 2021, Mattingly, as the Estate's personal representative, filed a motion for order for return of estate funds that asked the trial court to require Perry, who allegedly had not responded to two requests to return the Estate funds, to pay $18,252.50, or half of what Perry received from the Estate, to the

---

[1] The record does not indicate to whom these fees were paid.

Hamilton County Clerk "in order that that those funds may be properly paid to the remaining heirs." (*Id*. at 25.) As part of that motion, Mattingly alleged:

> Subsequent to the receipt of the estate funds and payment of estate proceeds, the Personal Representative became aware that one (1) side of the family was missed. Upon receipt of the Petition to Determine Heirs of Decedent filed by interested parties on September 22, 2021, the Personal Representative requested an investigator to search for heirs previously unknown to Personal Representative.

(*Id*. at 24.) The motion for return of funds listed Perry as one of the people upon whom service was required.

[7] The trial court ordered the parties to present argument on the motion for return of funds and on Brown Heirs' petition to determine heirs at the December 28, 2021, hearing. On Friday, December 24, 2021, someone at Perry's residence in Georgia[2] signed a receipt of notice for a document regarding the Estate's motion for return of funds.[3]

[8] On December 27, 2021, Brown Heirs filed a waiver of objection to motion for order for return of the Estate's funds. Also on December 27, 2021, Brown Heirs

---

[2] It is unclear from the record who signed the certified mail receipt. A copy of the certified mail slip is not in the record, and Perry affirmed, as part of her motion for relief of judgment, "I do not recall having received any summons providing me of [sic] notice of a claim against me." (Appellant's App. Vol. II at 47.)

[3] A copy of the notice is not in the record presented to us on appeal and thus we are unable to determine if the notice was of the motion, the hearing, or both. This omission has made the review of this case more difficult.

filed a petition to remove Mattingly as personal representative of the Estate. Therein, Brown Heirs alleged:

1.  Mattingly has from the outset been unqualified and unsuitable to serve as PR [Personal Representative] in that:

a.  she sought appointment as PR notwithstanding that she does not meet the statutory definition of an "interested person" under I.C. 29-1-1-31(18), and

b.  she disregarded the venue statute, I.C. 29-1-7-1, by opening the estate in Hamilton County, notwithstanding that the decedent was not domiciled in Hamilton County and owned no property in Hamilton County, and

c.  she submitted a . . . petition for her own appointment as PR [which] is materially false in that it alleged that Imogene Perry is the "only distributee" and "only heir" in this matter.

2.  Mattingly has mismanaged the estate:

a. by failing to conduct such minimal research as would have readily identified Michael P. Brown and Phillip Brown, along with the children of their deceased sibling, Noel Brown, as additional heirs, and

b.  by charging or permitting the "limited attorney in fact," Lauth Investigations International, Inc. ("Lauth") to charge, an unreasonable (and arguably unlawful) fee amounting to thirty percent (30%) of the sole available and easily administered cash asset of the estate, and

> c.  distributing to Imogene Perry seventy percent (70%) of the sole assets, $36,505, despite easily discoverable existence of other heirs . . . and
>
> d.  in light of one or more other matters in which Mattingly, in concert with Lauth, has, in disregard of I.C. 29-1-1-31(18) and I.C. 29-1-7-1, has [sic] engaged in an ongoing scheme to extract unreasonable and unlawful fees from unsuspecting heirs of deceased owners of property.

(*Id*. at 27-8) (internal footnotes[4] omitted).  Based thereon, Brown Heirs asked the trial court to remove Mattingly as the Estate's personal representative, require Mattingly "to replace all funds received by her or paid by her to Lauth and pay fifty percent (50%) of the sole cash asset to the petitioners and the children of their deceased sibling, and appoint a suitable successor personal representative."  (*Id*. at 28.)  Brown Heirs also asked the trial court to award them attorney's fees because "[i]t has been necessary for petitioners to utilize the services of an attorney to a greater extent than would have been required absent the PR's mismanagement[.]"  (*Id*.)  Brown Heirs attached to their

---

[4] One omitted footnote cites Indiana Code section 32-34-1.5-75(c), which states, in relevant part:

> An agreement under subsection (a) which provides for compensation in an amount that is unconscionable is unenforceable except by the apparent owner. Compensation for an agreement under subsection (a) is unconscionable if the fee or compensation is more than ten percent (10%) of the amount collected, unless the amount collected is fifty dollars ($50) or less, and may not exceed five thousand dollars ($5,000). An apparent owner that believes the compensation the apparent owner has agreed to pay is unconscionable or the attorney general, acting on behalf of an apparent owner, or both, may file an action in a court with jurisdiction to reduce the compensation to the maximum amount that is not unconscionable. An apparent owner that prevails in an action under this subsection may be awarded reasonable attorney's fees.

(Appellant's App. Vol. II at 27.)  The other footnote indicated Abbott's obituary was attached to the motion.

petition a copy of Abbott's obituary, which Brown Heirs stated "was found within two minutes via online search[.]" (*Id*. at 27.)  The obituary indicated "[Abbott] is survived by numerous uncles, aunts, and cousins[.]" (*Id*. at 29.)

[9]     On December 28, 2021, the trial court held the scheduled hearing on the motion for return of the Estate's funds and the Brown Heirs' petition to determine heirs.[5]  Perry did not appear.  On January 5, 2022, the trial court issued an order that named Abbott's heirs as Perry, Michael, Phillip, the Estate of Noel F. Brown, Nancy Lee Brown Hullinger Taubert, and Joan Pauletta Brown Cole Starr.  Based on the determination of additional heirs, the trial court ordered Perry to return $36,505.00, or all the funds she received from the Estate, by January 21, 2022.  The trial court's order indicated that "[i]n the event the funds are not returned on or before January 21, 2022, this amount shall be reduced to judgment." (*Id*. at 32.)  Also in its order, the trial court found "Imogene Abbott Perry received notice of the hearing via certified mail. Exhibit 1 shows receipt of notice of this hearing received on December 24, 2021."[6]  (*Id*.)

[10]    Additionally, in the January 5, 2022, order, the trial court set a hearing for January 11, 2022, on Brown Heirs' request to remove Mattingly as personal

---

[5] The record does not include a transcript of this hearing.

[6] Exhibit 1 is not in the record before us.  However, we note the distribution list on the trial court's December 14, 2021, order scheduling the December 28 hearing does not include Perry.  The failure to provide Exhibit 1 has severely hindered our review.

representative of the Estate.[7] On the day of the hearing, the trial court continued the hearing without any indication of a new hearing date.

[11] On March 9, 2022, Mattingly, as personal representative of the Estate, filed a motion to reduce to a judgment the trial court's January 5, 2022, order that Perry pay the Estate $36,505.00. Mattingly alleged Perry had not repaid the funds to the Estate by January 21, 2022, as ordered. On March 10, 2022, the trial court issued an order reducing the $36,505.00 plus statutory interest to a judgment against Perry.

[12] On March 17, 2022, Brown Heirs filed a motion for an order requiring Mattingly to show cause why Mattingly should not be required to "make restitution to the estate for funds improperly distributed." (*Id*. at 38.) In addition to the allegations made in their petition to remove Mattingly as the Estate's personal representative, Brown Heirs argued:

> 6. Now Mattingly is attempting to claw back from Imogene Perry - a nonresident of Indiana - some or all of the money paid to her. Even if this effort succeeds, it will be insufficient [to] make the Browns whole in the light of the fact that 30% of the assets, or approximately $15,600, was distributed to Lauth and Mattingly.
>
> 7. Mattingly should be required to make the Browns whole promptly and from whatever combination of personal funds, malpractice insurance proceeds and reimbursement from Lauth

---

[7] The trial court never ruled on this motion but, as is discussed later in the facts, Mattingly was eventually removed as personal representative of the Estate.

> Investigations is expedient. She may, of course, continue to pursue partial reimbursement from Imogene Perry, but the collectability of such reimbursement should not be of concern to the Browns.

(*Id.* at 38-9.)

[13] On March 24, 2022, the trial court granted Brown Heirs' motion to show cause and scheduled a hearing on the matter for April 21, 2022. On April 21, 2022, Mattingly, as personal representative of the Estate, filed a motion to continue and a request for the trial court to appoint a special administrator for the Estate. The same day, the trial court entered an order appointing Anne Poindexter as the Estate's special administrator.

[14] Also on April 21, 2022, Perry filed a motion to intervene in the administration of the Estate. She indicated she would like to intervene because "[t]his court has entered a judgment against her for $36,505, and it does not appear that any formal complaint was made against her or that sufficient service of summons, if any, occurred." (*Id.* at 40.) The trial court granted Perry's motion the same day.

[15] On May 3, 2022, Perry filed her motion for relief from judgment alleging she was entitled to relief under Indiana Trial Rule 60(B)(1), (2), (4), and (8). She asserted the trial court did not have personal jurisdiction over her because "[t]here was neither a complaint nor service of process" and because she did not have the minimum contacts with Indiana necessary for the trial court to confer personal jurisdiction over her. (*Id.* at 43.) She also disputed whether she was

required to, or was currently, holding the disbursed funds in a constructive trust.[8] Additionally, she argued she had the meritorious defenses of fraud and dispute over an amount of money. She alleged:

> [Mattingly] is the personal representative [of the Estate] and the attorney for the personal representative. She is in a conflict of interest because as the personal representative, she appears to have a claim against herself for her malfeasance or malpractice over her legal determination that Imogene Perry was the sole heir. After Ms. Mattingly paid money to her, she decided that her determination was wrong and that other heirs might exist. . . . Therefore, she has wrongfully pursued Ms. Perry, and has done so in the wrong state, to get the money back. Even if Ms. Mattingly would have some claim for equitable relief, she is blocked from that relief by her "unclean hands."
>
> The dispute over the amount of money is another meritorious defense. This court entered a judgment against Ms. Perry for the full amount of the $36,505. The other parties in this litigation do not claim that she is entitled to nothing. . . . Ms. Perry contends that she is not obligated to return money and if so, it ought to be after a determination by a court having jurisdiction over her. If Ms. Mattingly erred, she should correct the error by paying those individuals who have been harmed by it, not pursuing Ms. Perry.

(*Id*. at 44-5.)

---

[8] We cannot ascertain whether Mattingly informed Perry that she should hold the funds sent to her in a constructive trust until the Estate was closed because the record before us does not contain any documentation regarding the money sent to Perry.

[16] Perry attached an affidavit to the motion in which she affirmed, in relevant part, "I had no meaningful chance to defend myself because of my health, my geography, and lack of notice. I do not recall having received any summons providing me of notice of a claim against me." (*Id*. at 47.) She further stated: "If Janice Mattingly made a mistake, then she should own up to it. She and others may be at fault, and I was not at fault. I accepted money that I in good faith believed was mine." (*Id*. at 48.) On May 24, 2022, Perry filed an amended motion for relief from judgment wherein she asserted the trial court's default judgment was void pursuant to the grounds raised in her original motion and Trial Rule 60(B)(6), which provides relief based upon lack of notice.

[17] On June 13, 2022, Mattingly replied to Perry's interrogatories, sent sometime before that date. In response to those interrogatories, as is relevant here, Mattingly indicated she did not have communication with Perry via email or text message, but instead she "exchanged emails with Ms. Perry's daughter." [9] (*Id*. at 79.)

[18] On June 14, 2022, Poindexter, as special representative of the Estate, filed a petition to convert the Estate from unsupervised to supervised because there were "significant conflicts with the case." (Appellee's App. Vol. II at 8.) On

---

[9] Mattingly's response indicated the relevant emails were attached, but the attachments do not appear in the record before us.

June 15, 2022, the trial court granted Poindexter's request. It also scheduled a hearing on Perry's motion for relief from judgment for July 13, 2022.

[19] On July 12, 2022, the Estate filed its response to Perry's motion for relief from judgment. The response first laid out the procedural history of the case and responded to Perry's personal jurisdiction and meritorious defenses arguments. In conclusion, the Estate stated:

> 22. Perry's execution of a contract and Limited Power of Attorney with Lauth concerning Lauth engaging third persons and acting on Perry's behalf concerning the recovery of any estate assets to which Perry was entitled from the Estate of Richard Abbott was sufficient to confer personal jurisdiction over Perry with respect to the Court's order concerning the return of estate funds pursuant to both Ind. Trial Rule 4.4 and the Due Process Clause of the Fourteenth Amendment. Moreover, Perry, who admittedly acted with no fraudulent intent to induce the personal representative to send Perry the estate funds in question, is nonetheless holding said estate funds in a constructive trust. To find otherwise would result in injustice to the other beneficiaries even in the absence of fraudulent intent.

> 23. A close review of the docket in this cause however does not reveal that Perry was properly notified of the hearing. The docket does not show distribution to her of the Motion for the return of funds [or] the Order following the hearing. However fundamental issues of fairness due [sic] require her to have been notified and to have had a meaningful opportunity to participate.

(Appellant's App. Vol. II at 63.) Based thereon, the Estate asked the court to deny the portion of Perry's motion for relief from judgment that sought relief for a lack of personal jurisdiction, but the Estate indicated it did "not object to

the Order being set aside and a new hearing date and time being served upon Ms. Perry." (*Id.*)

[20] On July 19, 2023, the trial court issued an order on Perry's motion for relief from judgment:

> 1. On January 5, 2022, this Court entered an Order requiring Imogene Perry to return to the Estate of Richard Abbott the amount of $36,505.00 on or before January 21, 2022.
>
> 2. On March 10, 2022 this Court granted the Personal Representative's Motion to Reduce Order to Judgment. A Judgment of $36,505.00 plus judgment interest beginning January 21, 2022 was entered against Imogene Perry.
>
> 3. On May 3, 2022, Imogene Perry, by counsel, filed a Motion for Relief from Judgment and accompanying affidavit. On May 24, 2022, Imogene Perry filed an Amended Motion for Relief from Judgment. The motion alleges the Court lacked personal jurisdiction over Imogene Perry and erred in entering a judgment against her.
>
> 4. On July 13, 2022, the Special Administrator filed a response to the Motion for Relief from Judgment. The response does not object to the Court setting aside the judgment, but disputes whether the Court lacks jurisdiction against Imogene Perry.
>
> 5. A hearing was set on this matter for July 13, 2022 but was reset due to congestion in the Court's calendar.

(Appellee's App. Vol. II at 11.) The trial court vacated its January 5, 2022, order for return of Estate funds and vacated its March 10, 2022, judgment

against Perry. It reset the issue of Perry's motion for relief from judgment, specifically the issue of personal jurisdiction, for August 22, 2022. On July 22, 2022, Poindexter, as representative of the Estate, filed a motion to continue the August 22, 2022, hearing. The trial court granted the motion to continue and rescheduled the hearing for November 2, 2022.

On October 21, 2022, Perry filed her reply to the Estate's response to her motion for relief from judgment. In reiterating her arguments regarding personal jurisdiction, Perry noted the issue of notice could be dispositive. Perry argued, regarding any error in her receipt of Estate funds, "Ms. Mattingly should be accountable to the estate for her negligence and breach of duty if she overpaid Ms. Petty [sic]. Instead of being accountable, she has misused court proceedings to get an improper default judgment against Ms. Perry." (Appellant's App. Vol. II at 65) (internal footnote omitted). She further asserted:

> Ms. Perry was solicited by Lauth as part of its business model with Ms. Mattingly. Mr. [sic] Perry did not pick Hamilton County as a venue. She did not petition to open the Abbott estate. She did not pick Janice Mattingly as the personal representative. She did not talk to Ms. Mattingly. She was just an heir.

(*Id*. at 73.) Perry also reiterated her arguments regarding her meritorious defenses for relief from judgment. In conclusion of those arguments, she stated:

> Ms. Mattingly did not have clean hands and did not do equity. She opened the estate in the wrong venue, negligently

administered the estate, mishandled the estate's money, ignored proper legal process to get a judgment against Ms. Perry, breached her fiduciary duty to account to the estate for her own mistake, and became entangled in conflicts of interest. She delayed withdrawing as personal representative.

As to conflicts, Ms. Mattingly was concurrently personal representative and attorney for the personal representative. As an attorney, she knew that she as a personal representative had certain duties, including the duty to account for her mistakes. After she made a mistake her personal financial interests interfered with her fiduciary duties. She has never accounted to the estate, thus causing delay and expense to the estate. Her conflicts and other behavior disqualify the estate for any relief under the idea of constructive trust.

(*Id.* at 75-6.)

[22]    On November 2, 2022, the trial court held the hearing[10] regarding the issue of its personal jurisdiction over Perry. Following the hearing, Brown Heirs submitted proposed findings:

1. That Imogene Perry has received a distribution from the estate in an amount greater than the amount to which she was entitled as one of the six heirs of the decedent.

2. Notwithstanding Ms. Perry's receipt of an excessive amount, certain due process requirements were not met in proceedings in this court, and the judgment against her should be vacated, without prejudice to any party's right to resume proceedings to

---

[10] A transcript of this hearing is not in the record presented on appeal.

recover any excess amount that cannot be recovered from the initial personal representative (or Lauth Investigations, Inc. in the event that it is properly made a party to these proceedings).

3. Proceedings against Ms. Perry at the present time may divert resources better applied to such actions as may be necessary to recover restitution from Janice Mattingly, the initial personal representative, and/or from Lauth Investigations, whose fee agreement was only with Ms. Perry.

4. The judgment against Ms. Perry should be vacated, and proceedings against Ms. Perry should be stayed pending such actions as may be necessary to obtain restitution from Janice Mattingly and/or Lauth Investigations.

(*Id*. at 81-2.) Similarly, Perry submitted a proposed order in which the trial court would vacate the judgment and dismiss the case against her. On November 9, 2022, the trial court issued its order denying Perry's motion to set aside judgment. Therein, it found and concluded:

1. A *Motion for Order for Return of Estate Funds* was filed, and Imogene Perry was notified by certified mail of the motion and hearing, as set forth in the Court's *Order on Hearing of December 28, 2021*;

2. Trial Rule 4.4 provides for jurisdiction when the non-resident is doing business, or has done business, in Indiana;

3. Imogene Perry signed a Claimant Agreement as well as a Letter of Agreement and Contract for Genealogical Research Services with Lauth Investigations, Inc., an Indiana company ("Lauth"), and which contract was pursuant to Indiana law for their recovery of assets for the Estate of Richard Abbott;

4. Imogene Perry also signed a limited power of attorney for Lauth to act, including the power to transact business with third parties on her behalf, including courts; and

5. Lauth hired the former Personal Representative to open the estate and recover funds. Funds were recovered and then improperly distributed in favor of Ms. Perry to the exclusion of all other heirs. Perry's actions are sufficient pursuant to Indiana law to allow for personal jurisdiction over her in this Estate.

(*Id*. at 13-14) (formatting in original).

[23] On November 22, 2022, Perry filed her Notice of Appeal[11] with this court. On November 23, 2022, Poindexter, on behalf of the Estate filed a petition for instructions with the trial court. She indicated "no person in the undersigned's office practices in appellate work" and asked the trial court to "appoint alternate counsel to respond to and address the appeal initialed by opposing counsel." (Appellee's App. Vol. II at 13.) On December 7, 2023, the trial court ordered: "On review of the case, it does not appear the Estate has sufficient financial resources available to pursue an appeal. Accordingly, the court instructs the Special Administrator to take no further action as to the pending

---

[11] The caption of the trial court's order states the name of this case as "In re: the Unsupervised Estate of Richard Abbott, Deceased" (Appellant's App. Vol. II at 13) (original formatting omitted). Perry's notice of appeal states the name of the case as "Imogene Perry, Appellant-defendant below v. Anne H. Poindexter, Personal Representative of the Supervised Estate of Richard Abbott, Appellee-plaintiff below And Michael P. Brown and Phillip Brown, Interested Parties." (Appellee's App. Vol. II at 15.) The caption of the case in Odyssey is "Unsupervised Estate: Imogene Abbott Perry v. Janice Mandla Mattingly."

appeal." ("Judge's Order of December 6, 2023" filed by the trial court on December 7, 2023.)[12]

[24] On January 25, 2023, Mattingly filed a motion to intervene and to stay in Perry's appeal with our court. Therein, she stated:

1. In this action, the Appellant, Imogene Perry, complains regarding an error made by the then Personal Representative, Janice Mandla Mattingly.

2. Imogene Perry received sums from the estate that were to be divided to other heirs.

3. Immediately upon becoming aware of the error is [sic] the distribution of the estate, Janice Mandla Mattingly immediately sought to correct the error.

* * * * *

12. Mattingly's appearance in this matter is necessary to rebut the claims of the Appellant in that it is of Mattingly that she complains.

13. The Special Administrator has not appeared in this matter to defend the Trial Court's Order, nor does it appear that she intends to appear. On December 7, 2022, the Trial Court

---

[12] This order and others cited herein appear in the trial court record in Odyssey but not in the appellate record provided by the parties.

> instructed the Special Administrator to take no further action as
> to the pending appeal.
>
> ("Motion to Intervene" filed with the Court of Appeals on January 25, 2023.)

On January 26, 2023, Perry filed a response to Mattingly's motion to intervene. Therein, Perry argued:

> 1. [Mattingly's] motion cites no law, rule, or other legal authority to permit intervention. Those omissions justify denial of the motion outright.
>
> 2. Imogene Perry is appealing a judgment against her and in favor of the Estate of Abbott for $36,505. There is no judgment for or against Ms. Mattingly.
>
> * * * * *
>
> 10. The purpose of Ms. Perry's appeal is to undo the wrongful judgment [the denial of her motion for relief from judgment].
>
> 11. Ms. Mattingly says in paragraphs 12-13 of her motion that she does not think that the current personal representative is going to be involved in the appeal. Thus, Ms. Mattingly thinks it is necessary for Ms. Mattingly to act.
>
> 12. Her motion does not cite any statute, case, or rule to permit her to stand in the shoes of the current personal representative.
>
> 13. She has no standing because a former personal representative of an estate has no standing to assert claims for the estate. See, *Simon v. Simon*, 957 N.E.2d 980 (Ind. Ct. App. 2011). That seems axiomatic.

14.  Ms. Mattingly cannot make legal arguments that the current personal representative does not want to make, and there is no valid legal argument that the court had personal jurisdiction when there was no complaint or summons or service.

15.  It is a conflict of interest because Ms. Mattingly is putting her personal financial concerns at odds with the interests of her former client, the Estate of Abbott.  Ms. Mattingly was the attorney for the estate.

16.  I informed Steven Fillenwarth, attorney for Ms. Mattingly, of [*Simon v. Simon*, 957 N.E.2d 980 (Ind. Ct. App. 2011] and of the conflicts of interest.  I required that he withdraw the motion by a certain time.  He asked for more time, which was granted.  The time has passed.  He has not withdrawn the motion.

17.  Ms. Mattingly's motion is not a good faith filing.  It is not supported by argument or by law.  It is contrary to law.

18.  Because Ms. Mattingly lacks standing and because she is otherwise not entitled to intervention, the Court of Appeals should deny her motion.

("Perry's Opposition to Mattingly's Motion to Intervene" filed January 26, 2023, with the Court of Appeals, pages 1-3.)

[26]   On February 1, 2023, Brown Heirs filed a motion for leave to proceed against Mattingly and Lauth.  Therein, Brown Heirs asked the trial court to allow them to pursue an action against Mattingly and Lauth.  Brown Heirs alleged they were "entitled to five-sixths of the distributable estate assets, yet, as a direct and proximate result of the negligence of Mattingly and Lauth have for most of the

life of this estate been denied the distributions to which they have been entitled." ("Motion for Leave to Proceed Against Janice Mattingly and Lauth Investigations, Inc." filed February 1, 2023, with the trial court, page 1) (original formatting omitted). Further, Brown Heirs alleged they "should not have to await the result of an appeal by Imogene Perry in order to proceed against Mattingly and Lauth, and indeed could not be made whole by Imogene Perry even in the unlikely event that she surrendered the entire amount received to the estate." (*Id.* at page 2.)

On February 1, 2023, Mattingly, "individually and as counsel for Lauth Investigations International[,]" filed in the trial court a motion to intervene and a motion to stay. (Appellee's App. Vol. II at 25.) Therein she stated, in support of the argument that she and Lauth should be permitted to intervene in the trial court's case involving the Estate pursuant to Indiana Trial Rule 24(A):

> 1. On or about February 1, 2023, Michael P. Brown and Phillip Brown, by counsel, filed a *Motion for Leave to Proceed Against Janice Mattingly and Lauth Investigations, Inc.* (sic).

> 2. The funds demanded by Michael P. Brown and Phillip Brown are now in the possession of Imogene Perry. This Court has ordered Ms. Perry to return the funds but she has not done so.

> 3. Ms. Perry has filed an appeal of this Court's Order to return the funds which is now pending as *Imogene Perry, Appellant-defendant below v. Anne H. Poindexter, Personal Representative of the Supervised Estate of Richard Abbott, Appellee-plaintiff below*, Cause no. 22A-EU-02774.

4.  Because the undersigned and Lauth Investigations International (hereinafter "LII") have been named in the Motion for Leave filed by Messrs. Brown, it is necessary for the undersigned and LII to intervene in this action in order to defend their positions.

* * * * *

13.  The undersigned and LII request that this matter be stayed.

(*Id*. at 24-5) (emphasis in original).  On February 7, 2023, Brown Heirs filed an objection to Mattingly's motion to stay.  Therein, they stated:

1.  Because Michael P. Brown and Phillip Brown and their siblings and successors(s), they [sic] will not be made whole even if Imogene Perry disgorges every cent that was improperly distributed to her under Mattingly's handling of the estate.  The amount received by Ms. Perry was net of an exorbitant payment to Lauth.

2.  The payment to Lauth was exorbitant and unreasonable in that

a.  On information and belief, and subject to discovery, Lauth's research was negligent, resulting in the exclusion of five-sixths of the proper heirs to the estate;

b.  The Browns were not parties to Ms. Perry's agreement with Lauth, and did not need or benefit from the services of Lauth;

c.  Any percentage-based fee charged by Lauth should apply only to Ms. Perry's share of estate assets.

3. The Browns have incurred attorney fees which would not have been necessary but for the misconduct of Mattingly and Lauth, and have been denied the use of money they should have received at least one year ago. The court should award both attorney fees and interest to the Browns. Further delay will increase these amounts.

4. Collection of any amount from Ms. Perry may serve as partial reimbursement to Mattingly and Lauth, but the liability of Mattingly and Lauth to the Browns is not premised upon the collectability of any sum Ms. Perry may be determined to owe.

("Objection to Stay" filed with the trial court on February 7, 2023, pages 1-2.)

Additionally, Brown Heirs alleged,

Mattingly's representation of both herself and Lauth may implicate Ind. Rules of Prof. Conduct 3.7, since she will likely be a necessary witness at trial. Because her representation of Lauth may be provisional or temporary, the Browns do not move to disqualify her at this time, but reserve the right to do so at a future time.

(*Id.* at n.1.)

On February 20, 2023, our court issued an order that temporarily stayed Perry's appeal and remanded the issue of Mattingly's motion to intervene[13] to the trial

---

[13] As noted by the Brown Heirs, at the time of her motion to intervene in this matter as well as her motion to intervene in the underlying trial court case, Mattingly was not personal representative of the Estate and one of the ties she had in the trial court proceedings and this appeal was her interest in the payment she received during her tenure as personal representative. We note that generally a former personal representative does not have standing to argue on an estate's behalf. *See Simon v. Simon*, 957 N.E.2d 980, 988 (Ind. Ct. App. 2011) (although Bren Simon was personal representative at the time of the interlocutory order prompting

court. Our court ordered the trial court to rule on Mattingly's motion to intervene within ten days of our order. On February 27, 2023, the trial court found the motion to intervene and motion to stay "are meritorious and should be granted." ("Order Granting Motion to Intervene and Motion to Stay" filed by the trial court on February 27, 2023.) Based thereon, it ordered that "Janice Mandla Mattingly and Lauth Investigations International shall be permitted to intervene in this action and that this matter is STAYED pending resolution of the appeal filed by Imogene Perry against the estate." (*Id*.) (emphasis in original). After Mattingly filed a status report indicating the trial court's grant of the February 1, 2023, motion to intervene and motion to stay, our court issued an order declaring Mattingly's motion to intervene in Perry's appeal as moot based on the trial court's February 27, 2023, order. Mattingly filed her brief on May 16, 2023.

# Discussion and Decision

[29] Perry argues the January 5, 2022, default judgment and the March 10, 2022, judgment against her are void. Default judgments serve several important policy objectives including "maintaining an orderly and efficient judicial system, facilitating the speedy determination of justice, and enforcing compliance with procedural rules[.]" *Huntington Nat. Bank v. Car-X Assoc. Corp.*,

appeal, she did not retain standing to present an argument on appeal after her removal as personal representative of the estate).

39 N.E.3d 652, 659 (Ind. 2015). However, these objectives "should not come at the expense of professionalism, civility, and common courtesy." *Id.* As our Indiana Supreme Court has explained, "default judgment 'is not a trap to be set by counsel to catch unsuspecting litigants' and should not be used as a 'gotcha' device[.]" *Id.* (quoting *Smith v. Johnston*, 711 N.E.2d 1259, 1264 (Ind. 1999)).

[30] Perry sought relief from the default under Trial Rule 60(B). Pursuant to Indiana Trial Rule 60(B)(6), the trial court may relieve a party from a judgment if "the judgment is void." Our standard of review regarding a motion for relief from judgment pursuant to Rule 60(B)(6) "requires no discretion on the part of the trial court because either the judgment is void or it is valid" and, thus, our review is de novo. *Rice v. Comm'r, Indiana Dep't of Env't. Mgmt.*, 782 N.E.2d 1000, 1003 (Ind. Ct. App. 2003) (quoting *Hotmix & Bituminous Equip. Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824, 826 (Ind. Ct. App. 1999)).

[31] Perry argues the trial court erred when it denied her motion for relief from judgment because she did not receive adequate notice of the Estate's motion for return of funds and/or the December 28 hearing. A judgment against a party can be void if the party did not receive proper notice of the proceedings. *Smith v. Tisdal*, 484 N.E.2d 42, 44 (Ind. Ct. App. 1985). "Notice must reasonably convey the required information to the affected party, must afford a reasonable time for that party to respond, and is constitutionally adequate when the practicalities and peculiarities of the case are reasonably met." *In re M.L.K.*, 751 N.E.2d 293, 296 (Ind. Ct. App. 2001). "[P]rocess which is a mere gesture is not due process. The means employed must be such as one desirous of actually

informing the absentee might reasonably adopt to accomplish it." *Munster v. Groce*, 829 N.E.2d 52, 58 (Ind. Ct. App. 2005) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

[32]    The trial court's order denying Perry's motion to set aside the judgment against her indicated: "A *Motion for Order for Return of Estate Funds* was filed, and Imogene Perry was notified by certified mail of the motion and hearing, as set forth in the Court's *Order on Hearing of December 28, 2021*[.]"  (Appellant's App. Vol. 2 at 13.)  That order on the December 28, 2021, hearing included a finding that: "Perry received notice of the hearing via certified mail.  Exhibit 1 shows receipt of notice of this hearing received on December 24, 2021."  (*Id.* at 32.) We are uncertain of the validity of that finding as Exhibit 1 is not in the record on appeal and, although Perry was on the distribution list for the motion for return of funds, her name does not appear on the distribution list for the order scheduling the December 28 hearing.  As such, we are uncertain that Perry received notice of both the motion for return of funds and the hearing to be held on December 28.  Nevertheless, even if we assume for the sake of argument that Perry received notice of both the motion and the hearing thereon, the notice she received on December 24, 2021, was inadequate.

[33]     If the notice was of the Estate's motion for return of funds, that motion sought to require Perry to pay at least $18,252.50,[14] which she received as part of the settlement of the Estate. While not titled as such, the motion for return of funds was an effort by Mattingly, on behalf of the Estate, to bring Perry, who was not a party to the Estate action, into the matter as a third-party defendant because Mattingly, on behalf of the Estate, alleged Perry may be liable for all or part of the portion of the Estate sought by Brown Heirs. *See* T.R. 14(A) (defending party "may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him"). Thus, pursuant to Indiana Trial Rule 4(B), upon "the filing of a complaint or an equivalent pleading" the complaining party shall furnish the clerk of court with sufficient copies of the filing to serve notice of the complaint or equivalent pleading and a summons on the opposing party. Under Indiana Trial Rule 4.15(f), the summons must be "reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond." After a party receives notice of a claim or equivalent pleading, they have twenty days to respond thereto. T.R. 6(C).

---

[14] The fact that the amount requested in the motion for return of funds, $18,252.50, was not the same amount the trial court ordered Perry to return in its default judgment - $36,505.00 - further supports the importance of Perry's ability to defend herself against the Estate's claim.

[34] If Perry received notice of the Estate's motion via certified mail on December 24, 2021, when a hearing on the matter was to be held on December 28, 2021, we agree with Perry that the short notice

> stamped out important legal rights of Ms. Perry, including but not necessarily limited to her rights to (1) meaningful notice and opportunity to be heard, (2) to obtain legal counsel, (3) to ask for transfer of venue, (4) to move for dismissal, (5) to ask for a jury trial, (6) to engage in discovery, (7) to join additional defendants, and (8) to petition for removal of the personal representative.

(Appellant's Br. at 16-17.) The notice here was served in a way that was not calculated to give Perry ample notice of the proceedings involving her or to allow her any time to prepare her defense to that motion. In fact, we conclude it was a mere gesture done in a manner intended to, at best, deny Perry her right to respond within twenty days under Indiana Trial Rule 6(C) and, at worst, catch Perry in a "gotcha" moment intended to bring about a default judgment. Therefore, if the notice in question was notice of the Estate's motion for return of funds, it was not sufficient under the Indiana Trial Rules. *See*, *e.g.*, *King v. United Leasing*, 765 N.E.2d 1287 (Ind. Ct. App. 2002) (default judgment against King reversed because King did not receive sufficient notice of the claim against him).

[35] If the notice was intended to inform Perry of the December 28, 2021, hearing, the circumstances are equally problematic. December 24, 2021, was a Friday, and December 28, 2021, was a Tuesday. Perry is an elderly woman with health problems who was, at the relevant time, domiciled in Georgia. Notice was

served to her just prior to a major holiday, that is, Christmas on December 25, 2021. While her ability to travel in an expedient manner is unknown, it was unreasonable to expect Perry to, at the very least, hire a lawyer and procure transportation to Indiana, in that short amount of time. Regardless of the nature of the notice, Perry did not receive the time required by Indiana Trial Rule 6(C) to respond to anything involving the Estate's motion for return of funds and thus the trial court erred when it denied her motion for relief from judgment. *See*, *e.g.*, *624 Broadway LLC v. Gary Housing Authority*, 193 N.E.3d 381 (Ind. 2022) (default judgment reversed because notice sent to 624 Broadway LLC was insufficient).

## Conclusion

[36] The trial court erred when it denied Perry's motion for relief from judgment because she did not receive notice of the Estate's motion for return of funds and/or the related hearing to be held on December 28, 2021, in a way calculated to provide her a meaningful opportunity to appear and defend herself. We reverse the trial court's order and remand. On remand, the trial court shall hold a hearing on all pending motions in this matter, including but not limited to the motion for return of funds and any motions with respect to the fees Perry and/or the Estate paid to Mattingly and/or Lauth.

[37] Reversed and remanded.

Altice, C.J., and Foley, J., concur.